Filed 7/1/26  P. v. Cooper CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MARK COOPER,<br><br>        Defendant and Appellant. | B346552<br><br>(Los Angeles County<br>Super. Ct. No. NA094945) |

APPEAL from orders of the Superior Court of Los Angeles County, Laura Laesecke, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Mark Cooper appeals from an order denying his petition for resentencing under Penal Code[1] section 1172.6. Defendant contends the trial court's oral ruling indicated the court applied the wrong standard of proof to his petition. Although we agree the trial court at times misstated the standard of proof, the court's analysis demonstrated it applied the correct standard in concluding defendant was guilty of murder beyond a reasonable doubt.

Defendant further appeals from the trial court's refusal to issue an order directing the California Department of Corrections and Rehabilitation (CDCR) to grant him a youth offender parole hearing under section 3051. Defendant asserts he is eligible for such a hearing under *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*), which held section 3051's exclusion of certain offenders sentenced to life without parole (LWOP) for special circumstance felony murder violates equal protection.

Defendant's *Briscoe* challenge is premature. Assuming arguendo *Briscoe* applies, defendant has not reached his eligibility date for a youth offender parole hearing, and thus CDCR has yet to determine whether defendant is entitled to that hearing. The trial court correctly denied his premature request.

Accordingly, we affirm the trial court's orders.

## FACTUAL BACKGROUND

In January 2013, "[defendant] and three unidentified confederates[ ] entered a home in a mobile home park ostensibly to purchase a large quantity of marijuana from the head of the household, Mr. Padilla, living there with his family. Defendant

---

[1] Unspecified statutory citations are to the Penal Code.

and two of his confederates were armed with firearms. Padilla's son-in-law, Mr. Vidal, and friend, Ms. Loza, were present, and Padilla's neighbor, Mr. Gonzalez, entered towards the end of the events. The outcome of the transaction and the ensuing violence left Vidal dead at the hand of one of the confederates to whom defendant gave his gun upon another confederate's command to 'shoot.' Gonzalez also was shot, but he survived, as did Padilla, another target of the shooting. After the shootings, defendant and his confederates fled with the marijuana." (*People v. Cooper* (Nov. 28, 2018, B283492) [nonpub. opn.].)

## PROCEDURAL BACKGROUND

### 1.   *Conviction and sentence*

In March 2017, a jury convicted defendant of first degree murder with the special circumstance that defendant was engaged in the commission or attempted commission of robbery or burglary, two counts of attempted murder, one count of assault with a firearm, four counts of robbery, and one count of burglary. The jury found true firearms enhancements on all counts.

The trial court sentenced defendant to life in prison without the possibility of parole plus 10 years, with an additional indeterminate term of 14 years to life plus 20 years. The trial court also sentenced defendant to a determinate term of 26 years 8 months in prison.

On appeal we reversed two of the robbery convictions and one of the firearm enhancements, but otherwise affirmed the convictions. We remanded for resentencing. The trial court again imposed life without the possibility of parole plus 10 years and 14 years to life plus 20 years, but reduced the determinate term to 16 years.

## 2. *Petition for resentencing*

On September 8, 2023, defendant filed a petition for resentencing under former section 1170.95. The trial court concluded defendant's petition stated a prima facie basis for relief and issued an order to show cause.

Prior to the evidentiary hearing, defendant filed a "Petition for Youthful Offender Parole Hearing Pursuant to *People v. Franklin*, *People v. Briscoe*, and Pen. Code § 3501." He attached a proposed order directing CDCR "to schedule and provide [defendant] with a Youthful Offender Parole Hearing . . . ."

Defendant testified at the evidentiary hearing, as did a clinical psychologist opining on how defendant's youth at the time he committed his crimes may have affected his behavior. The trial court admitted into evidence transcripts and defense exhibits from defendant's trial, the psychologist's evaluation of defendant, and a DNA analysis of the crime scene from June 2014.

The trial court denied the resentencing petition and the petition for a youthful offender parole hearing. We elaborate on the court's reasoning in our Discussion, *post*.

Defendant timely appealed.

## DISCUSSION

### A. Senate Bill No. 1437 and Section 1172.6

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173

4

(*Lee*).)  "[U]nder the felony-murder rule as it existed prior to Senate Bill No. 1437, a defendant who committed a statutorily enumerated felony such as robbery could be convicted of murder for a killing during the felony without further examination of their mental state."  (*People v. Garcia* (2022) 82 Cal.App.5th 956, 964–965.)  After Senate Bill No. 1437, however, "[a] participant in the perpetration or attempted perpetration of [an enumerated felony, including robbery] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1)  The person was the actual killer.  [¶]  (2)  The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  [or] (3)  The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e); see *Garcia*, at p. 965.)

Assembly Bill No. 1437 also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief."  (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)  "If a petitioner makes a prima facie showing of relief under section 1172.6 — that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code — the resentencing court must issue an order to show cause for an evidentiary hearing."  (*Lee, supra*, 95 Cal.App.5th at p. 1174.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the

petitioner is guilty of murder or attempted murder under California law as amended by" Senate Bill No. 1437.  (§ 1172.6, subd. (d)(3).)  In determining whether the prosecution has met its burden, "[t]he trial court acts as an independent fact finder." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457 (*Rodriguez*).)

**B.    The Trial Court Applied the Correct Standard of Proof When Ruling on Defendant's Resentencing Petition**

Defendant argues the trial court applied the wrong standard of proof when evaluating his resentencing petition, as indicated by the court's comments when explaining its ruling. Defendant contends the court's comments demonstrate the court did not independently determine defendant was guilty beyond a reasonable doubt under current law, but instead determined there was sufficient evidence from which a jury could conclude defendant was guilty beyond a reasonable doubt.  As we explain, although some of the trial court's comments were inartful, the court's analysis demonstrated it was acting as an independent fact finder determining defendant's guilt beyond a reasonable doubt.

**1.    The trial court's decision**

Explaining its decision to deny defendant's resentencing petition, the trial court began by stating, "[T]he People have proven that the defendant can be convicted of both the murder and the attempted murders beyond a reasonable doubt . . . ."  The court referred to evidence at trial that one of perpetrators yelled "Shoot," after which defendant threw his gun to a confederate who then fired at the victims.  The court continued, "[T]hat's why

6

I feel that the evidence is sufficient to prove beyond a reasonable doubt under an aiding and abetting theory that [defendant] could be convicted of . . . murder[ ] on that theory alone . . . [,] because when someone says 'Shoot' that is an expressed intent to kill, and [defendant] tosses the gun to facilitate that act. [¶] So if this were to go to trial now, I would instruct the jury on first- and second-degree murder under an aiding and abetting theory, and that also applies to the attempted murder . . . ."

The court also addressed felony murder, an alternative theory offered by the prosecution. The court stated, "I don't find [defendant's] testimony here in court to be credible," explaining defendant's testimony conflicted with witness testimony at trial. The court instead credited the trial testimony of victim Loza, which the court found "more credible."

The court then addressed the factors for determining whether a defendant was a major participant in the underlying felony and acted with reckless indifference to human life (§ 189, subd. (e)(3)), as set forth in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Discussing the role defendant "play[ed] in the planning of the criminal enterprise," the court summarized evidence from trial, then stated, "[I]n terms of the planning and the criminal enterprise, I think [defendant] was part of a plan. He knew how to do [the robbery] when they went in there, and he is the one who is taking the phones, putting [the victims] down, starting to put the zip ties on them."

Regarding defendant's supplying or using lethal weapons, the court noted defendant "brought his own [weapon]," which "weighs against him in this analysis." As to awareness of the dangers posed by the crime, the court stated, "I think anybody

7

that goes inside of a house, a small residence, this is a trailer park, with guns doing drug deals is aware of the dangerousness." The court stated defendant was "present at the scene of the killing and in a position to facilitate or prevent the actual murder," because he "could have not thrown the gun [to the shooter]." The court continued, "[S]o yes, he was in a position to prevent this from happening."

Addressing whether defendant's actions played a role in the killing, the court noted defendant provided the shooter with a gun. The court also summarized the evidence of defendant's action after the shooting, noting no one helped the victims.

The court addressed whether the circumstances posed a grave risk of death, and whether defendant had information beyond the mere fact his confederates were armed. The court answered both questions, "Yes." Discussing defendant's proximity to the crime and whether he could have prevented it or aided the victim, the court stated, "Again, he is right there in the room," and noted defendant could have, but did not, leave, call the police, or hold onto his gun rather than provide it to his confederate. As to the duration of the offense, the court stated it was not clear from the trial transcripts, although "it sounded like things went fairly quickly. But, again, I don't think that mitigates the defendant's participation based on the facts that we have already gone over." Regarding whether defendant was aware a confederate would likely kill, the court stated, "I need to say no more that when someone yells 'Shoot' and you give somebody a loaded gun, you're aware." The court further stated, "I can't think of any factors that minimizes [the] violence."

The court addressed defendant's "youthfulness" at the time of the crime, acknowledging he was "under the age of 26." The

8

court stated, "[I]n terms of listening to his testimony, he had a level of sophistication at that time" based on previous "very large transactions for marijuana" in which defendant was armed. "So this was not a rash or impulsive action by the defendant." Rather, "[t]his sounds like somebody who . . . has established a relationship . . . to do these types of crimes." "This was a very concerted effort or decision to buy the marijuana in a large quantity from these individuals and [it] sounded like to me, in terms of the transcript testimony, to rob them . . . . It seemed like to me they had a plan to go in and do that, in terms of taking the marijuana if they could do so. [¶] And I don't see that there is anything youthful about [defendant's] conduct that would tell me that he did not understand the consequences of his actions." The court noted after the crime defendant "wasn't panicking. He wasn't upset. It sounds like he just drove away."

The court stated, "So with all of those things in mind, I find that [defendant] is a major participant in the underlying felony. That he acted with reckless disregard, and that the youthfulness . . . is not a significant factor that mitigates him being culpable under the felony murder standard even as it is today."

The court concluded, "So under both direct aiding and abetting and felony murder standard, I believe that [defendant] could be convicted by a jury of his peers beyond a reasonable doubt based on the evidence and testimony in this case."

### 2. Analysis

Defendant identifies the following statements by the trial court as evidence the court applied the wrong standard (with emphasis added):

9

"[T]he court finds that the People have proven that the defendant *can be convicted* of both the murder and the attempted murders beyond a reasonable doubt."

"[T]hat's why I feel that the evidence *is sufficient* to prove beyond a reasonable doubt under an aiding and abetting theory that [defendant] *could be convicted* . . . on that theory alone."

"So under both direct aiding and abetting and felony murder standard, I believe that [defendant] *could be convicted by a jury* of his peers beyond a reasonable doubt based on the evidence and testimony in this case."

Defendant is correct that these statements are not a proper articulation of the standard of proof under section 1172.6, subdivision (d)(3). That subdivision requires the trial court to determine not whether a defendant *could* be found guilty beyond a reasonable doubt — that is, whether the evidence is sufficient to support a conviction — but whether the defendant "*is* guilty" beyond a reasonable doubt, based on the trial court's independent assessment of the evidence. (§ 1172.6, subd. (d)(3), italics added; see *Rodriguez*, 103 Cal.App.5th at p. 457.)

The trial court's actual analysis, however, is consistent with the proper standard of proof. The court expressly made credibility findings, specifically that defendant's hearing testimony was not credible, whereas victim Loza's trial testimony was. Credibility is the exclusive province of the finder of fact, and not an appropriate consideration when reviewing merely for sufficiency of the evidence. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 142.) In making a credibility determination, therefore, the trial court necessarily was acting as the finder of fact.

10

When discussing the *Banks* and *Clark* factors, the trial court at no point referred to the sufficiency of the evidence, or what conclusions the evidence *could* support, but rather weighed the evidence and made its own findings. This is demonstrated by the following examples:

"I think [defendant] was part of a plan."

"Defendant "brought his own [weapon]," which "weighs against him in this analysis."

Defendant was "present at the scene of the killing and in a position to facilitate or prevent the actual murder," because he "could have not thrown the gun [to the shooter]." "[S]o yes, he was in a position to prevent this from happening."

Addressing whether the circumstances posed a grave risk of death, and whether defendant had information beyond the mere fact his confederates were armed, the court answered, "Yes."

"[Defendant was] right there in the room."

Although "[the crime transpired] fairly quickly," "I don't think that mitigates the defendant's participation . . . ."

Regarding whether defendant was aware a confederate would likely kill, "I need to say no more that when someone yells 'Shoot' and you give somebody a loaded gun, you're aware."

"I can't think of any factors that minimizes [the] violence."

"[T]his was not a rash or impulsive action by the defendant."

"I don't see that there is anything youthful about [defendant's] conduct that would tell me that he did not understand the consequences of his actions."

In addition to these examples, the trial court concluded its discussion of the *Banks* and *Clark* factors with express findings:

11

"I find that [defendant] is a major participant in the underlying felony. That he acted with reckless disregard, and that the youthfulness . . . is not a significant factor that mitigates him being culpable under the felony murder standard even as it is today."

As with the trial court's credibility findings, these statements are consistent with independent fact-finding, not review for sufficiency of the evidence. Again, the court was not stating what the evidence *could* demonstrate, but what it *did* demonstrate. The court did not find a jury *could* conclude defendant was a major participant acting with reckless disregard; instead, the court stated, "*I* find" defendant was a major participant acting with reckless disregard. (Italics added.)

We recognize that immediately after stating these findings, the trial court stated, "I believe that [defendant] could be convicted by a jury of his peers beyond a reasonable doubt based on the evidence and testimony in this case." This incorrect articulation of the standard of proof does not undermine the trial court's detailed analysis demonstrating application of the proper standard of proof. Put another way, any error in stating the standard of proof was harmless because the court's analysis applied the correct standard.

That said, we urge trial courts to take care in articulating the standard of proof under section 1172.6 to avoid challenges like this in the future.

## C. The Trial Court Properly Denied Defendant's Request for a Youth Offender Parole Hearing

Defendant contends the trial court erred in denying his requested order that CDCR grant him a youth offender parole

hearing. Defendant's request was premature, and the court properly denied it.

### 1. Youth offender parole hearings and *Briscoe*

As a general matter, prisoners who committed their controlling offenses at the age of 25 years or younger are entitled, after a designated period of incarceration, to a "youth offender parole hearing." (§ 3051, subd. (a)(1).) That hearing is held after 15, 20, or 25 years of incarceration, depending on the length of the prisoner's sentence. (*Id.*, subd. (b)(1)–(4).)

The rule is different for prisoners sentenced to life without the possibility of parole. Those prisoners are eligible for a youth offender parole hearing only if they committed their controlling offenses before they turned 18. (§ 3051, subds. (a)(1), (b)(4).) Those hearings take place after 25 years of incarceration. (*Id.*, subd. (b)(4).) LWOP prisoners who committed their controlling offense after they turned 18 are statutorily ineligible for a youth offender parole hearing. (*Id.*, subd. (h).)

In *People v. Franklin* (2016) 63 Cal.4th 261, our Supreme Court observed that youth offender parole hearings happen long after commission of the controlling offense, at which point "memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Id.* at pp. 283–284.) To preserve evidence "regarding the juvenile offender's characteristics and circumstances at the time of the offense" (*id.* at p. 283), our high court held that a defendant may request a hearing in the trial court at which the defendant "may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing" (*id.* at p. 284).

In *Briscoe*, a prisoner serving an LWOP sentence for murder filed a motion for a *Franklin* evidence preservation proceeding and a youth offender parole hearing. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 486.) The prisoner acknowledged he had committed his controlling offense at age 21, and thus was ineligible under section 3051, but argued that statute's exclusion of LWOP prisoners violated the constitutional guarantee of equal protection. (*Briscoe*, at p. 486.) The trial court denied the motion. (*Ibid.*)

The Court of Appeal reversed, holding section 3051 violates equal protection as applied to a defendant sentenced to LWOP under section 190.2, subdivision (d), as was the prisoner in that case. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 485.) Section 190.2, subdivision (d) permits a court to impose an LWOP sentence when a defendant, although "not the actual killer," "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of [an enumerated felony] which results in the death of some person or persons." (§ 190.2, subd. (d).)

The *Briscoe* court determined that, following Senate Bill No. 1437, the elements of section 190.2, subdivision (d) were identical to the elements of felony murder under section 189, subdivision (e)(3). (*Briscoe*, *supra*, 105 Cal.App.5th at p. 491.) The court concluded section 3051 therefore "violates equal protection by excluding youth offenders sentenced for special circumstance murder under section 190.2, subdivision (d) . . . while including those convicted of nonspecial circumstance first degree felony murder for the same specified felony offenses per the exact same standard under section 189, subdivision (e)(3)." (*Briscoe*, at p. 485.) The court therefore "reform[ed]" section 3051

14

"to include youth offenders like Briscoe who were sentenced to life without parole under section 190.2, subdivision (d) for murder during a robbery or burglary." (*Briscoe*, at p. 496.)

In its disposition, the appellate court remanded with directions "to schedule and conduct" a *Franklin* proceeding and youth offender parole hearing "and any related proceedings for which a need arises." (*Briscoe*, *supra*, 105 Cal.App.5th at pp. 495–496.)

## 2. Additional background

As noted in our Procedural Background, defendant filed a "Petition for Youthful Offender Parole Hearing Pursuant to *People v. Franklin*, *People v. Briscoe*, and Pen. Code § 3501," and attached a proposed order directing CDCR to schedule and provide that hearing. In his petition, defendant argued *Briscoe* extended section 3051 to "non-killer youthful offenders who were convicted of murder on a robbery/burglary felony-murder theory," a circumstance defendant contended applied to him. Defendant's petition did not request a *Franklin* hearing, citing *Franklin* only for the proposition that section 3051 grants youthful offenders the right to a youth offender parole hearing.

The trial court addressed defendant's petition at the end of the section 1172.6 evidentiary hearing. The court stated it had never had to sign an order directing CDCR to provide a section 3051 hearing, and believed "[t]hat is a decision for the parole board." The court noted defendant had yet to serve 15 years, apparently referring to the minimum incarceration period before CDCR must provide a section 3051 hearing. The court stated the

15

proposed order made it seem as if the court were ordering the hearing now, and the court would not make such an order.[2]

Defendant's counsel argued under *Briscoe*, "[T]he court has to sign the order." The trial court paused the proceedings to read *Briscoe*. Going back on the record, the court stated defendant was entitled to a *Franklin* evidence preservation proceeding, "[b]ut I'm not comfortable signing an order that he is eligible for a youthful offender parole hearing at this point." The court continued, "I'm not disagreeing that [section] 3051 applies, but I don't think it's appropriate for me to sign an order for a youthful offender parole hearing."

The trial court reiterated it would grant a *Franklin* evidence preservation hearing, and assumed defendant was requesting one. Defendant's counsel responded, "No. What I'm asking for is the court to order CDCR to schedule a youthful offender parole hearing pursuant to [section] 3051." The court offered again to provide a *Franklin* hearing, an offer to which counsel did not respond except to repeat its request for a ruling on the petition for a youth offender parole hearing. The court then ruled, "I'm denying it if you're asking me to just rule under *Briscoe*."

### 3.    Analysis

Defendant argues under *Briscoe* his LWOP sentence for the robbery/burglary special circumstance does not bar him from a youth offender parole hearing, and the trial court should have

---

    [2] The court referred to the hearing requested by defendant as a "*Franklin* hearing." In context it is clear the court meant a youth offender parole hearing, not an evidence preservation proceeding.

16

ordered that hearing as did the Court of Appeal in *Briscoe*. The Attorney General argues *Briscoe* was wrongly decided, and even if it were not, defendant's circumstances are distinguishable.

These issues are not yet ripe for decision.[3] (*Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1135 [the ripeness doctrine "prevent[s] courts from issuing purely advisory opinions or resolving abstract differences of opinion"].) We agree with the trial court that, assuming arguendo *Briscoe* applies to defendant, he nonetheless has not reached his eligibility date for a section 3051 hearing, and therefore his request for that hearing is premature.[4] We do not know at this point if CDCR would grant or deny that hearing in light of *Briscoe* or other authority. Put another way, defendant has yet to suffer an injury for which the court may provide a remedy. There was nothing the trial court could do for him, and therefore no action by the trial court for us to review.

We recognize that in *Briscoe* the Court of Appeal remanded with directions to schedule and conduct a *Franklin* proceeding and section 3051 parole hearing. (*Briscoe, supra,* 105 Cal.App.5th at pp. 495–496.) In that case, however, the trial court denied the defendant a *Franklin* hearing because of his statutory ineligibility under section 3051. (*Briscoe*, at p. 486.) That denial put the constitutionality of section 3051 front and center, and served as an adverse ruling the Court of Appeal could review.

---

[3] We invited supplemental briefing on the ripeness question.

[4] Having committed his crimes in January 2013, defendant has at most been incarcerated 13 years as of the date of this opinion.

17

Here, in contrast, the trial court did not deny a requested *Franklin* hearing, but offered to order such a hearing, an offer defendant's counsel declined. Further, unlike the trial court in *Briscoe*, the trial court in the instant case stated it was "not disagreeing that [section] 3051 applies" to defendant. Thus, the adverse trial court ruling present in *Briscoe* is absent here.

In the absence of a denial of a *Franklin* hearing or other adverse ruling based on a finding the defendant is ineligible under section 3051, a preemptive order directing the parole board to hold a hearing is akin to an advisory opinion. Further, motions for those preemptive orders burden the courts with determinations that may prove unnecessary — much may transpire between now and the time when defendant arguably becomes eligible for a parole hearing that could affect his entitlement to that hearing.

## DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          M. KIM, J.

18